IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CPS CONSTRUCTION GROUP, INC., | : | |
| 927 Route 910, Suite 200 | : | Case No. _____ |
| Cheswick, Pennsylvania 15024, | : | |
| | : | |
| Plaintiff, | : | District Judge _____ |
| | : | |
| v. | : | |
| | : | |
| CITY OF MEDINA, | : | |
| 132 North Elmwood Avenue | : | |
| Medina, Ohio 44256, | : | |
| | : | |
| Defendant. | : | |

## VERIFIED COMPLAINT

For its Verified Complaint against Defendant City of Medina, Ohio ("**Medina**"), Plaintiff

CPS Construction Group, Inc. ("**CPS**") states:

## INTRODUCTION

1. This is a bid protest case.

2. Medina had to follow the rules for soliciting and awarding a design-build contract

for a parking garage under Ohio statutes, Medina city ordinances, and Medina's own expressly

non-waivable, non-negotiable terms set forth in Medina's Request for Proposal for the project.

3. Medina did not follow any of such rules, ordinances, or terms.

4. If it had, Medina would be awarding the project to CPS, which was the lowest

bidder and which received the best score in the evaluation process.

5. Instead, Medina is breaking the rules and abusing its discretion by attempting to

award the project to The Ruhlin Company ("**Ruhlin**"), which submitted an unresponsive

alternate proposal that failed to comply with the rules, ordinances and terms required of all bidders.

6.      Ruhlin could not satisfy the City's prescribed design criteria within the budget limit which the City had set, so Ruhlin submitted an alternate proposal in addition to its primary proposal.

7.      Ruhlin's alternate, however, is unresponsive because its design is an entirely different project than the one the City had solicited, violating numerous material and mandatory prescribed design criteria, and moving the project onto different land and enlarging the permissible project footprint as set forth in, and required, by the bid documents.

8.      Medina does not have discretion to award a project that is materially different from the one it solicited.

9.      And even if Medina had such discretion, Medina is abusing it by not following the law to provide Ruhlin with price related competitive advantages by accepting a project proposal that did not follow the rules and basing Medina's decision to award the contract on the very features of that bid which violated the stated design criteria.

10.      Medina has also failed to follow the procedures and process set forth in its ordinances and Request for Proposal in evaluating, analyzing and selecting the lowest and best proposal.

11.      CPS seeks declarations that Medina did not follow the rules, abused its discretion, and deprived CPS of CPS's constitutionally protected property interest in the project contract without due process.

12.     CPS also seeks an injunction prohibiting Medina from awarding the contract to Ruhlin, negotiating the contract with Ruhlin, entering into the contract with Ruhlin, authorizing Ruhlin to proceed with work under the contract, or paying Ruhlin under the contract.

13.     CPS also seeks damages for the costs CPS incurred to prepare its bid.

## PARTIES

14.     CPS is a Pennsylvania corporation.

15.     CPS's principal place of business is located at 927 Route 910, Suite 200, Cheswick, Pennsylvania 15024.

16.     Medina is an Ohio municipal corporation.

17.     Medina is located in Medina County, Ohio.

18.     Medina's City Hall is located at 132 North Elmwood Avenue, Medina, Ohio 44256.

19.     Medina is the owner of a design-build construction project commonly known as Medina Hall Parking Structure, City of Medina Project Number 1030 (the "**Project**").

## JURISDICTION AND VENUE

20.     This case includes a claim for violation of 42 U.S.C. 1983.

21.     The Court has subject matter jurisdiction under 12 U.S.C. 1331.

22.     CPS is a citizen of Pennsylvania.

23.     Medina is a citizen of Ohio.

24.     This action is a suit between citizens of different states.

25.     The value to CPS of the injunctive relief sought exceeds $75,000 because the amount of the contract at issue is at least $3,680,000 (the amount of CPS's bid for the Project) and being deprived of that contract causes CPS to lose both the opportunity to profit on such

contract (which profit is difficult to calculate but which is reasonably likely to exceed $75,000), as well as CPS's opportunity to demonstrate, show, and build upon its skill and experience in public construction projects, damaging CPS's good will.

26.     The amount in controversy, including the value or the object of the injunctive relief and the damages sought for bid preparation costs, exceeds $75,000.

27.     The Court has subject matter jurisdiction under 28 U.S.C. 1332(a).

28.     The Court may exercise personal jurisdiction over Medina because Medina is located within the territorial jurisdiction of the Court.

29.     The events that give rise to this Verified Complaint occurred in Medina County, Ohio, in connection with Medina's acts and omissions during the process of soliciting, evaluating, and awarding a contract for the Project in violation of the laws governing the competitive bidding of construction projects and in violation of 42 U.S.C. 1983.

30.     Venue is proper in this Court because all or most of CPS's claims for relief arose in connection with the bid solicitation, evaluation, and award process for the Project, and Medina is located in this District.

## BACKGROUND

31.     The Project is a publicly-funded project that is subject to competitive bidding laws, requiring, among other things, that the contract be negotiated with and awarded to "the lowest and best bidder." *See* Ohio Rev. Code 735.05; Medina City Code 141.01(d).

32.     Medina City Code 141.01 is a general law which requires that a city project in excess of $25,000 must be awarded to the "lowest and best" bid as determined by the City's Board of Control. *See* Medina City Code 141.01(d).

33.     A copy of Medina City Code 141.01 is attached as Exhibit A.

4

34. In March 2018 Medina passed Ordinance No. 52-18, which suggests that it complies with Medina City Code 141.01, but that does not appear to actually be the case.

35. Ordinance No. 52-18 states that the Mayor (not the Board of Control) is authorized to qualify bidders for the Project and evaluate their submissions and "shall make a recommendation to City Council for the award of a contract to the lowest and best proposal, which shall be within the sole discretion of this Council as to the determination of 'lowest and best.'"

36. A copy of Ordinance No. 52-18 is attached as Exhibit B.

37. Ordinance 52-18 also states that Medina will hire an architectural/engineering firm to be the Project's "Criteria Developer" which would provide Medina with consulting services and help Medina develop the design-build bid packages that would be issued to design-builders who would bid on the Project.

38. The Criteria Developer is also responsible for assisting Medina with selecting the design-build firm and would be Medina's agent during construction of the Project.

39. Attached to and incorporated into Ordinance 52-18 is a request for qualifications the City had prepared for the Criteria Developer position ("**Ordinance 52-18 Exhibit A**").

40. Ordinance 52-18 Exhibit A describes Medina's direction that the Project will be adjacent to the south side of City Hall "extending south into an area of an existing City owned surface parking lot."

41. Ordinance 52-18 Exhibit A further states "[t]he southern edge of the new parking facility ***will*** be located approximately ***80 feet*** north of the right-of-way of West Liberty Street (SR 18) ***in order to allow for future development of an approximately 80 ft. deep by 140 ft. wide commercial/retail building***." (Emphasis added.)

42.     Ordinance 52-18 Exhibit A further states "[t]he anticipated footprint of the new parking structure is 140 ft. by 250 ft., not including entry/exit ramps."

43.     In September 2018 Medina passed Ordinance 134-18, which authorized the Mayor to enter into an agreement with Desman Design Management ("**Desman**") to be Medina's Criteria Developer for the Project.

44.     A copy of Ordinance No. 134-18 is attached as Exhibit C.

45.     Desman helped Medina establish the Project criteria, identify qualified design-builders to submit proposals for the Project, and compile, evaluate, and score the proposals.

*The RFQ for Design-Builders*

46.     In November 2018 the City issued a request for qualifications to pre-qualify potential design-build firms who would participate in the subsequent bidding for an award of the Project (the "**RFQ**").

47.     A copy of the RFQ is attached as Exhibit D and incorporated by reference.

48.     The RFQ describes the footprint of the Project similarly to the description in Ordinance 52-18 Exhibit A—that it would extend south of the City Hall building into part of the existing parking lot along West Liberty Street, with a footprint of about 140 feet by 250 feet, and leaving a space of about 80 feet by 140 feet south of the "edge" of the new parking facility for the City's planned commercial development in that area.

49.     The RFQ included an Appendix with an aerial photograph of the Project location that identified "preliminary footprint of the structure."

50.     As a result of the RFQ process, Medina selected three companies—CPS, Ruhlin, and Mike Coates Construction Co. ("**MCC**")—to submit design-build proposals for the Project.

*The RFP*

51.     Medina issued a Request for Proposal ("**RFP**") to the these companies.

52.     A copy of the RFP, including its four Addenda, is attached as Exhibit E and is incorporated herein.

53.     The RFP includes mandatory provisions which had to be followed.

54.     The RFP set the mandatory boundaries of the footprint of land where the Project could be built (the "**Project Boundaries**").

55.     The RFP also set the mandatory boundaries of a footprint of land where a construction trailer could be set and where persons building the Project could park and where materials and construction could be laid for staging (the "**Staging Area**").

56.     The RFP also identified mandatory setbacks and other restrictions to ensure that the Project would not encroach into certain areas adjacent to the Project Boundaries, including an area that is immediately north of the Staging Area that is an existing surface lot providing parking access to City Hall (including parking for persons with disabilities) (the "**Existing NW Lot**"), as well as an area that is immediately south of the Project Boundaries which presently provides surface lot parking access to Downtown Medina and which Ordinance 52-18 and the RFQ and the RFP had said that Medina had planned to develop in the future (the "**Future Development Area**").

57.     The RFP also mandated that "[s]tair Cores exposed to the exterior shall be cladded in glass," which is an important public safety feature.

58.     The RFP also mandated that the Project had to include a canopy between the garage structure and City Hall.

59.     The RFP set a mandatory budget limit of $3,800,000, and stated that proposals which exceeded that limit "shall be considered non-responsive."

60.     The geotechnical report provided by Medina with the first Addendum to the RFP was for the Project Boundaries, and not the Staging Area or Existing NW Lot.

61.     The first Addendum to the RFP also included a utilization plan which mandated that "[d]esign and construction shall not hinder access to City Hall."

62.     Submissions were due by Friday, March 22, 2019, at 10:00 a.m.

63.     Each submission had to include both a technical proposal and a separate and accompanying cost proposal.

*The Selection Process and Criteria*

64.     The RFP set specific and mandatory procedures that had to be followed "in selecting a Design-builder and awarding a contract." *See* RFP Section III, Part XII.

65.     The RFP mandated that "[t]he successful proposal ***will*** be the one that provides the ***best value*** to the Owner, ***based on total score calculated using ranked Technical and Cost Criteria***." *See* RFP Section III, Part XII.B (emphasis added).

66.     The "best value" standard stated in the RFP is different from the "lowest and best" standard stated in Medina's Code and Ordinance 52-18.

67.     The RFP set forth specific criteria to score the Technical Proposals.

68.     The Technical Proposals had to be evaluated "based on the criteria ***contained in the RFP***." *See* RFP Section III, Part XII.A (emphasis added).

69.     The RFP set forth specific criteria to score the Cost Proposals.

70.     The scoring of the Cost Proposals was based in part upon the number of "accepted" parking spots provided for by the proposals. *See* RFP Section III, Part XII.B.v.a.

71.     The City created a committee to review and score the submissions (the "**Evaluation Committee**") with Desman's assistance.

72.     The Evaluation Committee members were: Medina Council President, John M. Coyne III; Medina Engineer, Patrick Patton; Medina Community Development Director, Jonathan Mendel; the Chair of Medina's Historic Preservation Board, Leslie Trades; and a local architect, Charles W. Klinkenberg.

73.     Although under Ordinance 52-18 the Mayor was tasked with making a recommendation of which bidder had submitted the "lowest and best" proposal, he was not an Evaluation Committee member.

*The Submissions*

74.     CPS made one submission.

75.     A copy of CPS's submission is attached as Exhibit F.

76.     CPS's submission complied with the RFP.

77.     CPS's design was set within the footprint of the Project Boundaries prescribed by the RFP.

78.     CPS's price was $3,680,000 ($120,000 below the budget set in the RFP).

79.     Ruhlin made two submissions.

80.     Ruhlin's first submission included a design that was set within the footprint of the Project Boundaries prescribed by the RFP.

81.     A copy of Ruhlin's first submission is attached as Exhibit G.

82.     Ruhlin's second submission was an alternate (the "**Ruhlin Alternate**").

83.     A copy of the Ruhlin Alternate is attached as Exhibit H.

84.     To make the Ruhlin Alternate fall exactly within the prescribed Project budget (at $3,800,000), Ruhlin had to eliminate the required Project canopy.

85.     The Ruhlin Alternate designed a project that is materially different from the one prescribed by the RFP.

86.     Medina Council President Coyne said that the Ruhlin Alternate "didn't follow the rules[.]"

87.     The Ruhlin Alternate designed a parking garage structure outside the Project Boundaries, on different land and oriented 180 degrees from the orientation set in the RFP.

88.     The Ruhlin Alternate design removes the Existing NW Lot.

89.     During construction the Ruhlin Alternate eliminates all of the surface parking in the Existing NW Lot (including parking for those with disabilities), without any realistically viable alternative, interim parking for City Hall.

90.     The Ruhlin Alternate fails to comply with the RFP's requirement that "[d]esign and construction shall not hinder access to City Hall." *See* RFP Addendum 1 at Construction Utilization Plan.

91.     The Ruhlin Alternate redefines, moves, and enlarges the Staging Area.

92.     The Ruhlin Alternate encroaches upon the parking in the Future Development Area during construction of the Project.

93.     The Ruhlin Alternate expands the Project Area west to North Elmwood Avenue onto land on which the RFP did not contemplating building the Project—land on which Medina was contemplating other future development.

94.     The overall footprint of the design of the parking structure in Ruhlin's Alternate is larger than the footprint for the Project which the RFP set.

95.     The design of the Ruhlin Alternate includes stair cores that are sheathed in brick on the exterior, thus failing to comply with the RFP's requirement that such stair cores be "cladded in glass" (an important public safety feature).

96.     Because the Ruhlin Alternate violates the design criteria set in the RFP, Ruhlin was able to exercise greater freedom of design than other bidders and could thereby achieve greater efficiencies of cost.

97.     The Ruhlin Alternate is materially different from the Project identified in the RFP.

98.     The Ruhlin Alternate is non-responsive.

99.     The non-conformance of the Ruhlin Alternate gives Ruhlin price related competitive advantages in that it allowed Ruhlin to design a project that, unlike other proposers, was not constrained by the location, soil conditions, Staging Area, Project Boundaries, and other requirements which were set forth in Medina's RFP.

100.    MCC made two submissions, but the dispute giving rise to this action is the City's expressed intent to enter into a contract with Ruhlin based upon the Ruhlin Alternate, over CPS's proposal (which was the lowest bid and which scored the highest in the evaluation process).

*The Scores and Desman's Recommendation*

101.    The Evaluation Committee and Desman evaluated and scored all submissions.

102.    On April 5, 2019, Desman wrote Medina a letter explaining the results of the evaluation process and providing the scores (the "**Desman Recommendation**").

103.    A copy of the Desman Recommendation is attached as Exhibit I.

104.    CPS had the highest total score of 197.35 points.

105.    A second place score of 189.11 points was given to the Ruhlin Alternate.

106.    Desman said that the Ruhlin Alternate only made it under budget by eliminating the canopy specified in the RFP.

107.    Desman said that Ruhlin also made "clarifications" about the Ruhlin Alternate "which are in conflict with the City RFP."

108.    Desman recommended that Medina contract with CPS.

*The Medina Finance Committee Meeting*

109.    On April 8, 2019, there was a meeting of Medina's Finance Committee.

110.    The meeting was recorded by audio and video which Medina made publicly available by posting it on the internet at https://www.youtube.com/watch?v=gVdlG9TLxak (the "**Video**").

111.    Medina Finance Committee Members were present at the meeting, as well as Medina's Mayor and Medina's Engineer, as well as other spectators.

112.    The Engineer presented first, explaining that there had been a "tie" between CPS's proposal and the Ruhlin Alternate (referring to the scores assigned to the technical proposals).

113.    The Engineer did not inform those in attendance that CPS had the highest total score.

114.    The Engineer did not disclose to those in attendance that Desman had recommended CPS, until almost the very end of the meeting, ***after*** the vast majority of the discussion and ***after*** the Committee Members had already been polled for their opinions about which proposal to pursue.

115.    The Engineer presented the Ruhlin Alternate first, noting that Medina's RFP had a different footprint than the one in the Ruhlin Alternate.

116.     Discussions were had regarding the differences between the CPS proposal and the Ruhlin Alternate, during which there were misstatements about the amount of parking spaces in each option, unsubstantiated assumptions about the costs to modify the designs presented in the two options, and admission that the Ruhlin Alternate did not comply with the requirements of Medina's RFP.

117.     Council President Coyne stated: "This alternate that Ruhlin did. Now they, they didn't follow the rules, right?" *See* Video at 56:06.

118.     He also said: "But I guess everyone had the opportunity to do something different outside the rules." *See* Video at 56:22.

119.     The components of the Ruhlin Alternate that were non-conforming to the RFP were the very components on which the Finance Committee based its decision to recommend the Ruhlin Alternate.

120.     Rather than considering the scores derived from the requirements of the RFP, and the recommendation of Medina's consultant, and applying appropriate standards for awarding the Project for which Medina had issued the RFP (i.e. one that would be built in the Project Boundaries), much of the meeting was spent in discussions related to whether it would have been better to site the Project differently and whether there were economic advantages to moving the Project onto different land.

121.     Rather than applying the specified criteria and selection process detailed in the RFP, or focusing on the legally permissible method for awarding public projects on previously announced criteria, much of the meeting was spent simply discussing what Committee members "liked." *See e.g.* Video at 48:40 ("you just gotta determine what you want and what you like"; Video at 50:57 (it comes down to "things that are peculiar to each individual taste of a [sic]

individual Council person I guess of what you think would be better"); Video at 1:05:36 ("To keep us on our timeline Patrick needs to know an answer so we gotta take a poll here of what what do people like?").

122.    At the meeting, after the Mayor raised concerns about parking for the disabled during construction and questions raised about repurposing the City's intent for use of the adjacent areas, Medina's Finance Committee voted to recommend an award to Ruhlin based on its Alternate.

123.    The Mayor did not make a recommendation during the meeting about who was the "lowest and best" bidder or which proposal provided the "best value."

*CPS's Protest*

124.    On April 10, 2019, CPS sent a letter to Medina providing CPS notice of protest of the recommendation to award the design-build contract for the Project to Ruhlin.

125.    A copy of that letter is attached as Exhibit J.

126.    Medina has not met with CPS since.

127.    CPS has not received a communication from Medina about whether Medina will reconsider its intent to award the Project to Ruhlin.

128.    Upon information and belief, Medina may be attempting to negotiate a written contract for the Project with Ruhlin.

129.    Upon information and belief, Medina may be planning to seek approval from City Council next Monday to award the Project to Ruhlin and enter into a contract with Ruhlin.

130.    Medina's disregard for the non-conformance of the Ruhlin Alternate with the requirements of Medina's RFP, Medina's misstatements and guessing of material facts when making its decision to recommend the award to Ruhlin, Medina's disregard for the scoring

14

system and criteria required to be used by the language of its own RFP, and its disregard for the recommendation of its retained design consultant, constitutes an abuse of discretion and violation of due process, 42 U.S.C. 1983, the RFP, and Ohio's competitive bidding laws.

## CLAIM ONE
### (DECLARATORY JUDGMENT)

131.    CPS incorporates, as if fully re-written herein, the allegations contained in paragraphs 1 through 130, above.

132.    An actual controversy exists between CPS and Medina regarding the legal rights and relationships between the parties in this action, and specifically whether Medina has complied with the RFP and the law when soliciting, evaluating, and awarding and entering into a contract for the Project with Ruhlin.

133.    Medina was and is required to award the contract to the design-build firm whose proposal was lowest and best.

134.    CPS was a qualified proposer for the Project, and its proposal for the Project received the highest total score using ranked Technical and Cost criteria and, accordingly, was the best.

135.    CPS's proposal for the Project also had the lowest price.

136.    The Ruhlin Alternate was not responsive to the RFP.

137.    Medina should not have considered the Ruhlin Alternate as a proposal for which Medina could award and enter into a contract for the Project.

138.    By accepting the Ruhlin Alternate, Medina conferred price competitive advantages to Ruhlin, including but not limited to the freedom and flexibility of options associated with designing on a footprint materially different from that which was prescribed in

the RFP and by permitting Ruhlin a larger area during construction and by allowing Ruhlin to not provide the canopy required by the RFP.

139.   Medina violated competitive bidding laws and abused its discretion, to the prejudice of CPS.

140.   Given that CPS's proposal was the "lowest and best" proposal (and even, alternatively, the "best value"), CPS should be awarded the design-build contract for the Project.

141.   CPS has no adequate remedy at law, and as such, requests that this Court issue a declaratory judgment, as follows:

> (i)    Ruhlin's Alternate proposal for the Project was non-conforming and such non-conformance, and Medina's consideration and acceptance of the proposal, resulted in providing Ruhlin unfair competitive advantage.
>
> (ii)   Medina's determination to award the design-build contract for the Project to Ruhlin constitutes a violation of competitive bidding law and an abuse of discretion;
>
> (iii)  Medina's decision not to award the design-build contract for the Project CPS is unlawful and Medina's Project criteria set forth in its RFP;
>
> (iv)   CPS's proposal for the Project is the "best value" based on the total score calculated using Medina's criteria for the Technical and Cost components.
>
> (v)    Medina abused its discretion by using unannounced evaluation criteria;
>
> (vi)   A design-build contract between Medina and Ruhlin for the Project based on the Ruhlin Alternate will be void;
>
> (vii)  It is unlawful for Medina to pay any money to Ruhlin for work performed on the Project; and

16

(viii)   the design-build contract for the Project should be awarded to CPS.

## CLAIM TWO
## (INJUNCTIVE RELIEF)

142.    CPS incorporates, as if fully re-written herein, the allegations contained in paragraphs 1 through 141, above.

143.    Medina's actions in deciding to award the design-build contract for the Project to Ruhlin is unjustified, unreasonable, an abuse of discretion, a violation of competitive bidding laws, results in a significant increased cost to City of Medina taxpayers and residents, and deprives CPS of its constitutionally protected interests in the contract for the Project and due process.

144.    CPS is without an adequate remedy at law and will suffer irreparable harm if Medina is allowed to proceed with awarding the Project to Ruhlin, contracting with Ruhlin, and proceeding with the Project with Ruhlin.

145.    CPS has demonstrated a likelihood of success on the merits, and a balancing of equities favors the issuance of a temporary, preliminary and permanent injunctive relief against Medina as follows:

(i)      Enjoining the award of the design-build contract to Ruhlin for the Project;

(ii)     Enjoining negotiation and contracting with Ruhlin for the Project;

(iii)    Enjoining the authorization of Ruhlin to perform any work on the Project; and

(iii)    Enjoining payment to Ruhlin for work performed on the Project.

## CLAIM THREE
### (VIOLATION OF DUE PROCESS UNDER 42 U.S.C. 1983)

146.     CPS incorporates, as if fully re-written herein, the allegations contained in paragraphs 1 through 130, above.

147.     Medina's abuse of discretion violated the competitive bidding laws and subjected CPS to conduct that occurred under color of state law.

148.     Medina's abuse of its discretion deprived CPS of its constitutionally guaranteed right to procedural due process under the Fifth Amendment of the U.S. Constitution.

149.     Medina's abuse of its discretion deprived CPS of its constitutionally guaranteed right to substantive due process under the Fourteenth Amendment of the U.S. Constitution.

150.     Medina's abuse of discretion violated the protections set forth in Ohio Revised Code 735.05 and 153.693 and Medina's Ordinance No. 52-18.

151.     CPS has incurred expenses in preparing its bid for the Project, and may incur additional costs and damage due to Medina's failure to adhere to its bid documents and its abuse of discretion.

152.     As a direct and proximate result of Medina's unlawful actions, CPS has been damaged in an amount that is not possible to calculate at this time.

153.     CPS has timely sought injunctive relief.

154.     Any award to Ruhlin would be a wrongful rejection of CPS's proposal.

155.     If CPS's request for injunctive relief is denied, and an award is made to Ruhlin, CPS is entitled to recover its bid preparation costs and other damages it has incurred and will incur.

156.     CPS is entitled to relief, under 42 U.S.C. 1983, in the form of a declaratory judgment that Medina's recommendation to award the design-build contract for the Project to

Ruhlin constitutes a violation of the Fifth and Fourteenth Amendment of the United States Constitution, the protections under Ohio Revised Code 735.05 and 153.693 and Medina's Ordinance No. 52-18.

157.    CPS is also entitled to injunctive relief for the violations of 42 U.S.C. 1983.

158.    CPS is also entitled to relief, under 42 U.S.C. 1983, recovery of its bid preparation costs and other damages it has incurred and will incur.

<u>**CLAIM FOUR**</u>
**(PROMISSORY ESTOPPEL)**

159.    CPS incorporates, as if fully re-written herein, the allegations contained in paragraphs 1 through 130 above.

160.    In soliciting bids for the Project, Medina clearly promised to award the contract to the lowest and best responsive design-build firm according to the announced bid criteria.

161.    Each prospective bidder, including CPS, could justifiably expect that its proposal would receive fair consideration consistent with the City's announced bid criteria.

162.    CPS reasonably relied upon Medina's representations by preparing and submitting a proposal.

163.    CPS's relied to its detriment because Medina did not follow its promises.

164.    CPS has been damaged as a result.

165.    CPS is entitled to recover the expenses it incurred in its unsuccessful participation in the competitive bidding process as well as the costs CPS incurred in its attempt to prevent Medina from proceeding with a contract with Ruhlin for the Ruhlin Alternate.

**WHEREFORE**, CPS respectfully requests the following relief:

A.  The declarations sought in Claim One;

B.  The injunctive relief sought in Claim Two, by temporary restraining order, preliminary injunction, and permanent injunction;

C. Damages, plus pre- and post-judgment interest thereon, for Claim Three;

D. Damages, plus pre- and post-judgment interest thereon, for Claim Four;

E. An award of costs of this action;

F. An award of reasonable attorney fees; and

G. All other relief, both legal and equitable, that the Court determines to be just and proper.

Respectfully submitted,

/s/ William J. Thrush

John B. Kopf (0075060)
William J. Thrush (0093219)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
(216) 566-5500
(216) 566-5800 (fax)
*Attorneys for Plaintiff CPS Construction Group, Inc.*

4824-1497-6660.4

20

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| CPS CONSTRUCTION GROUP, INC., | : |
| | : Case No. _____ |
| Plaintiff, | : |
| | : |
| v. | : District Judge _____ |
| | : |
| CITY OF MEDINA, | : |
| | : |
| Defendant. | : |

## **VERIFICATION**

The undersigned declares, pursuant to 28 U.S.C. § 1746 and under the penalty of perjury under the laws of the United States of America, that he has reviewed the Verified Complaint for the above-captioned matter, and that the factual allegations contained therein are true and correct to the best of his knowledge.

John Fratto
President, CPS Construction Group, Inc.

4833-6388-5204.1